(No. 10895.—Decree affirmed.)

EMMA J. GLOS, Appellant, *vs.* HENRY STUCKART, County
Treasurer, Appellee.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

1. EQUITY—*when court of equity will not lend its aid.* A court
of equity will not lend its aid to a complainant unless justice and
equity require that relief shall be granted, nor will its aid be given
to foster a multiplicity of suits in the future.

2. TAXES—*when statute requiring the county treasurer to ac-
cept taxes on parts of lots will not be enforced.* Section 162 of the
Revenue act, requiring the county treasurer to receive taxes on
parts of lots, will not be enforced to aid a scheme to enable the
owner of some fifteen hundred lots to avoid payment of taxes there-
on by conveying undivided interests therein, ranging from a 1/50th
to a 1/5000th part, in order to deter bidders at tax sales from buy-
ing the lots because of the existence of such undivided interests.

APPEAL from the Circuit Court of Cook county; the
Hon. THOMAS G. WINDES, Judge, presiding.

JOHN R. O'CONNOR, and ALBEN F. BATES, for appel-
lant.

MACLAY HOYNE, State's Attorney; (AUGUSTUS KELLY,
and JOHN F. HIGGINS, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant filed her bill in the circuit court of Cook
county against appellee on September 7, 1915, to restrain
him from selling her undivided interests in certain lots in
said county under a judgment and order of sale for de-
linquent taxes for the year 1914. She averred in the bill
that she was the owner of the said undivided interests on
April 1, 1914, and that she is still the owner thereof; that
said property was charged with taxes for the year 1914,
and that on April 15, 1915, she tendered to appellee, through
her agent, Jacob Glos, the full amount of taxes due on said
property; that appellee, his agents and deputies, refused to

receive payment of the taxes thereon; that judgment was rendered against said property for said taxes in the county court at the July term, 1915, and that appellee was about to sell such property and would do so unless restrained, and that thereby appellant would suffer irreparable injury and damage. Appellant in her bill offered to pay the amount of the taxes and interest, and averred that at the time she tendered to appellee and his agents the several amounts due on her undivided shares of said property they were informed that wherever, in computing the several amounts due on said undivided shares among the several taxing bodies, it should appear that the share of any distributee included fractions of a cent such fractions might be counted and charged as one cent, and that all of the taxes so computed might be taken and paid out of the $2000 in money which the bill averred was tendered to said appellee and his deputies for the purpose of paying the said taxes. The bill prayed for an injunction without notice, which was granted until the final hearing could be had on the bill.

Appellee answered the bill, denying that the appellant owned the property described in the bill and admitting that taxes had been levied against said lots by descriptions describing the entire lots, and averred that the same had not been levied against said lots in fractional parts or as undivided parts, and denied the tenders of payment set forth in the bill. Appellee averred that the whole of the various lots described in complainant's bill were formerly purchased at a tax sale by Jacob Glos, who is the husband of appellant; that after paying taxes on said property a sufficient length of time to obtain tax deeds, and after obtaining tax deeds thereto, he then purported to convey to appellant the small and infinitesimal portions thereof described in complainant's bill without any consideration whatever; that thereafter Glos failed and refused to pay the taxes on the undivided parts of said lots so retained and not conveyed by him; that said transactions between Glos and appellant were

not *bona fide;* that their purpose in so doing was and is to
evade the payment of taxes on the whole of said property
and to defraud said county and to prevent it from collect-
ing the taxes justly due on the whole of said property; that
the portions of the lots as so divided are not susceptible of
partition; that if the taxes are accepted by appellee on the
portions of lots described in the bill, Glos has heretofore
refused, and will hereafter refuse, to pay the taxes on his
undivided part of the said lots; that when his portions of
said lots should be offered for sale, either at tax sale or in
foreclosure proceedings, no purchasers have been or can be
obtained therefor, for the reason that appellant's undivided
interests are so infinitesimally small as to be incapable of
being set off to her, and would force purchasers thereof to
obtain a re-sale of the lots in partition proceedings to ob-
tain title thereto should they obtain tax deeds to the same;
that said matters and things have been fully considered and
deliberately planned by Glos and appellant for the purpose
of preventing the county from collecting its just taxes or
for the purpose of demanding and extorting large sums
of money from possible purchasers for said small and in-
finitesimal undivided parts of said lots. It was further
averred by appellee, and the proof so showed, that neither
appellant nor anyone for her appeared in the county court
to object to the rendition of judgment and order of sale.
Evidence was heard upon the bill and answer, and on con-
sideration of the same the injunction was dissolved and the
bill dismissed for want of equity. This appeal followed.

The evidence on the hearing of this cause shows that
appellant and Jacob Glos are husband and wife, and that
she had put into his hands, some ten years or more before
the deeds to said undivided interests were conveyed to her,
some $40,000 or $50,000 in money, from which he paid her
taxes and made investments for her. She states in her tes-
timony that she inherited the money twenty or twenty-five
years ago, and that she had given him money "right along"

to invest for her, and that she did not know how many times she had given him money and could not state the exact amount. When asked if she kept an account of the money given by her to him, her reply was: "Rather a careless one. That account is kept in the mind and figures both. I have not kept any account of the various real estate transactions that I have entered into with Jacob Glos. I leave that entirely to him." She testified in a general way that he had been her agent in the management of her affairs for a long time, and that as such agent he manages all her property in Cook county and pays the taxes on it, and that the tenders to the county treasurer of the $2000 in money to pay the taxes on her said undivided interests were made with her consent. No further or more lucid explanation of his agency appears in the record, and from her testimony it clearly appears that she knew very little about the conveyances to her of said undivided interests and that the purpose for which they were made was known only to Jacob Glos, and that the scheme, whatever it may be, for making conveyances to her of such unusually small undivided parts in the numerous lots set forth in the bill originated with him. For the purposes of this decision it matters not whether it be considered that the said property conveyed to her and the remainder thereof retained by him in said lots were rightfully hers and handled by him as her agent or as belonging to him and originally purchased with his funds.

More than fifteen hundred lots are described in the bill, in all of which the said Jacob Glos conveyed undivided interests to the appellant, ranging from a 50th to a 5000th portion of said lots. In the greater number of said lots the undivided interest conveyed is a 200th or a 300th part. In a very few of them the undivided interest conveyed is a 50th or a 60th part. In a number of the conveyances the parts are described as a 400th, a 500th, a 600th, a 700th, a 1000th, a 2000th or a 3000th undivided part, etc. The lots from which these small undivided interests

were conveyed to her were taxed and assessed as entire lots, and Jacob Glos had obtained tax deeds to all of said lots,—one thousand in number,—obtained at various times from June 21, 1901, to September 6, 1911. The said conveyances to appellant were made by forty-four quit-claim deeds, all executed by Jacob Glos in 1912 and 1914, and the consideration expressed in eleven of them is $10 and in the remaining thirty-three one dollar. The taxes on many of the lots described in the deeds is less than $11 for an entire lot and on many others less than $25 on the entire lot. The taxes tendered by appellant in this case on the undivided part on some lots run as low as one cent and a fraction, and on very many of them less than five cents, which is to be distributed among six or more taxing bodies, State, county, city, town, school and road districts, and in some towns additional taxes for drainage and parks are to be distributed. It is further disclosed by the evidence that neither appellant nor Jacob Glos appeared in the county court and made any objections to the judgment and order of sale of said lots, and that all of the lots out of which the small undivided interests were carved by the quit-claim deeds of Jacob Glos to appellant were forfeited to the State of Illinois for the non-payment of taxes as shown by the delinquent tax list of said county, the taxes upon which, as shown by said list, amount to more than one and one-half million dollars. It is also shown that the collection of the taxes upon the undivided interests of appellant in said lots and the entries upon the record to be made, together with the calculations of the amounts to be paid in each instance, would cost the county more than the entire taxes so collected upon said parts.

It is contended by the appellant that section 162 of the Revenue act (Hurd's Stat. 1916, p. 2189,) makes it mandatory on the county treasurer to accept payment of taxes on undivided interests in property, regardless of the size or amounts of the said interests and regardless of the purpose

for which said interests were created or how they came into being. That section provides: "The collector shall receive taxes on part of any lots, piece or parcel of land charged with taxes, when a particular specification of the part is furnished. If the tax on the remainder of such lot or parcel of land shall remain unpaid, the collector shall enter such specification in his return, so that the part on which the tax remains unpaid may be clearly known. The tax may be paid on an undivided share of real estate. In such case the collector shall designate on his record upon whose undivided share the tax has been paid." We cannot give our assent to the proposition contended for by appellant. The foregoing provision of the statute is valid and is binding on the county treasurer to the fullest extent and purpose for which it was enacted. We would not hesitate to enforce the statute in favor of any individual having undivided interests in lots or lands obtained in good faith in the ordinary and usual course of business, regardless of the extra cost occasioned to the officers collecting the tax. It was never the intent of the legislature, in the enacting of said statute, to permit any person to take any unconscionable advantage of taxing bodies or other persons by voluntarily dividing up their lots or lands into undivided parts between two or more persons in the manner shown by this record. The evident purpose of the conveyances to appellant by Jacob Glos was to avoid the payment of the large amount of taxes upon the lots held by him by tax deeds and to deter bidders at tax sales from buying said lots, and to deter other persons from buying said larger undivided interests in said lots because of the existence of appellant's small undivided interests. The entire value of many of the lots in question is evidently not much more than an ordinary attorney's fee allowed in a partition suit, and every intentional purchaser would be necessarily threatened with such a suit, or a suit to quiet or register title, if he made the purchase. The direct effect of the scheme of

Jacob Glos, therefore, necessarily tends to embarrass the tax collector in collecting the taxes by deterring bidders from purchasing said lots or any part thereof, and for a court of equity to sustain appellant's bill would· be for it to give to her and Jacob Glos aid in securing an undue advantage, to which they are not justly entitled in equity and good conscience. Equity will not lend its aid to a' complainant unless even-handed justice and good conscience demand that the relief asked should be granted. ·No tax law that has ever been enacted by the legislature has ever given to a tax purchaser such an advantage over the owner of the lot of land purchased at a tax sale as is sought by appellant in this bill. The law was formerly that purchasers at such sales were entitled to be considered as purchasers when they bid at such sale the smallest definite portion off the east side of the land that was to be sold. The present law changed the old law by enacting that the bidder at a tax sale shall be deemed a purchaser when he bids the lowest penalty, not to exceed twenty-five per cent. By the scheme disclosed in appellant's bill she seeks to be an owner of such an undivided part as will necessarily require a court proceeding on the part of every owner of the lands to be instituted or defended in order to enjoy the sole ownership in a part of the land owned by them. Courts of equity were never organized for the purpose of fostering or furnishing a ground for a multiplicity of suits, either at law or in equity.

The circuit court was warranted in its holding that the complainant did not come into court with clean hands, and the bill was properly dismissed for want of equity. The decree of that court is therefore affirmed.

*Decree affirmed.*